NicholsoN, C. J.,
delivered the opinion of the Court.
The question in this case arises upon the following facts, as they appear in the bill, answer and proof:
In November, 1860, Huddleston agreed to sell to Rainer a tract of land, in McNairy county, containing two hundred and ninety-seven acres, for fifteen hundred dollars; of which five hundred dollars was to be paid when possession was given, on the 25th of December, 1860, and the balance in one and two years. It was a parol contract, but bond for title was to be executed upon the payment of the $500. Rainer took possession on the 25th of December, 1860, but failed to pay the $500. In April, 1861, Rainer proposed to Huddleston, that the contract should be reduced to writing — to this, Huddleston replied, that he did not consider it a trade, unless he had paid the $500 down, which was to have been paid on the 25th December, 1860. Huddles-ton further said to Rainer, that he had told him, when they traded, that if he' thought he could not pay the $500, he had better not strike a lick on the place, towards improving it, for he would not pay him five cents for improving the place; but as he had moved on the place and made some improvements, if he would pay him $1,000 by the next *225 Christmas, with interest for twelve months, he would still give him a chance for the place, and would then give him a bond, for title when the remaining $500 was paid. Rainer continued in possession until late in the year 1863, when he abandoned the place, and moved to Illinois, where he remained for about three years. "Whilst he was in possession, he built several houses, cleared some land, and fenced the place. After Rainer moved away, Huddleston took possession of the place, and was holding it by his tenant, when Rainer returned, and demanded to be let into possession;' and upon failing to get possession, he filed his bill for compensation for the permanent improvements made by him. There is no allegation in his bill that he had paid any portion of the purchase money, nor does he deny but that the defendant had good title to the land, and was ready to comply with his portion of the contract.
These facts raise the question, whether a vendee of land by parol, who has failed to comply with his contract of purchase, and has paid no part of the consideration, but has -continued in possession, and made permanent improvements, with notice that the vendor was opposed to the improvements being made, can hold the vendor, who has taken possession, responsible for the enhancement of the value of the land by reason of the improvements?
By the English law and the common law of this State, the owner recovers his land by ejectment, without being subjected to the condition of paying *226 for tbe improvements, wbicb may bave been made upon tbe land. Tbe improvements are considered as annexed to tbe freehold; and pass witb tbe recovery. Every possessor makes sucb improvements at bis peril: 2 Kent, 335.
A different rule, however, has obtained in courts of chancery. It is well settled, that when a bona fide possessor of land has made improvements thereon, and tbe owner 'comes into a court of equity for an account of tbe rents and profits, tbe defendant will be allowed to deduct therefrom tbe full amount of all ameliorations and improvements wbicb be has beneficially made upon tbe estate: 2 Story Eq., § 799.
Since tbe case of Herring & Bird v. Pollard, 4 Hum., 362, courts of chancery in our State bave entertained bills, and given relief to parol vendees of land who bave been bona fide in possession and bave made improvements that added permanent value to an estate. In laying down this rule, in tbe case of Herring & Bird v. Pollard, our Court followed and adopted tbe reasoning of Justice Story, in tbe case of Bright v. Boyd, 1 Story’s Rep., 478, in wbicb Judge Story said: “It appears to me, speaking witb deference to other opinions, that ’ tbe denial. of compensation to sucb a bona fide purchaser, in sucb a case, where be has manifestly added to tbe permanent value of an estate by bis ameliorations and improvements, is contrary to tbe first principles of equity. To me it seems manifestly unjust and inequitable, to appropriate to one man tbe property and money of another who is in no default.”
*227 Ill tlie case of Matthews v. Davis, 6 Hum., 324, Judge Greene said, that tbe case of Bright v. Boyd, was tbe first in which compensation had ever been given to a parly seeking to make the true owner of the land liable. He adds: “ This is as far as any court has ever gone; and, we think, as far as any principle of equity will justify.”
In tbe case of Rhea v. Allison, 3 Head, 176, Judge "Wright states the rule with more fullness and precision than it was stated in either of the other cases referred to. He says: “It is settled, in this State, that where' a man is put in possession of land by the owner, upon an invalid or verbal sale, which tbe owner fails or refuses to complete, and in the expectation of the performance of the contract, makes improvements, a court of equity will directly and actively, by a bill filed by him against tbe owner for an account, make him compensation to the full value of all his improvements, to the extent they have enhanced the value of tbe land, deducting rents and profits, and will treat the land as subject to a lien therefor.”
It follows, from the several authorities referred to, that, complainant, who comes into a court of equity, and claims compensation for improvements made on tbe land of another, will be repelled, unless he shows that he was a bona fide possessor, holding under an invalid, or verbal sale, and honestly believing that he has, or will have, a valid title, and intending honestly to consummate his purchase by the payment of the purchase money, and while so holding, makes im *228 provements which add to the permanent value of the land, but fails to consummate his purchase, without fault on his part, and on account of the default of the vendor. Before he can successfully invoke the aid of a chancellor, it is incumbent on him to show that he has been in no default in not executing his contract, but that he has been prevented from so doing by the failure or refusal of the owner of the land to complete the sale.
It is manifest that in the case at bar the complainant has failed to bring himself within the rule laid down. By the terms of his contract he was to have paid five hundred dollars when he got possession — in this he violated his contract. After being in possession a few months, he was distinctly notified by the owner of the land, that by his failure to pay the cash payment, he considered the trade terminated; but he consented to extend the time to the end of the year, at which time complainant might pay one thousand dollars, and have the benefit of the trade. He continued in possession, but failed to make the payment at the end of the year. After his second default he still continued in possession for nearly two years, the owner of the land having no remedy against him, on account of the suspension of courts by the prevalence of the war. "Whilst the complainant was so in default, and with a full knowledge that the defendant considered the trade at an end, and that he desired no new improvements to be made on his land, the complainant removed the old improvements on the place, and replaced them by *229 others; and then at the end of nearly three years, as he alleges in his bill, he was forced to leave the premises on account of the condition of the country, resulting from the late war; and after remaining in another State until February, 1866, he returned and claimed compensation for his improvements. During all this time the defendant was in no default, but was ready and willing to complete the trade according to his contract. Under such circumstances, even if the improvements made had been shown clearly to have enhanced the value of the land, about which the proof is conflicting and unsatisfactory, we hold that the complainant has wholly failed to entitle himself to the relief prayed for.
The decree below is reversed, and the bill dismissed with costs.